FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 13, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

STEPHANIE R.,[1]

                    Plaintiff,

        v.

ANDREW M. SAUL, the Commissioner
of Social Security,[2]

                    Defendant.

No.    4: 19-CV-5053-EFS

**ORDER DENYING PLAINTIFF'S
SUMMARY-JUDGMENT MOTION
AND GRANTING DEFENDANT'S
SUMMARY-JUDGMENT MOTION**

        Before the Court are the parties' cross summary-judgment motions.[3]

Plaintiff Stephanie R. appeals the denial of benefits by the Administrative Law

Judge (ALJ). She alleges the ALJ erred by 1) improperly weighing the medical

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to her by

first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

[2] Because Andrew Saul is the Commissioner of the Social Security Administration,

the Court substitutes him as the Defendant. *See* Fed. R. Civ. P. 25(d).

[3] ECF Nos. 11 & 13.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

opinions; 2) discounting Plaintiff's symptom reports; 3) improperly determining that the impairments did not meet or equal a listed impairment; and 4) improperly assessing Plaintiff's residual functional capacity and therefore relying on an incomplete hypothetical at step five. In contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court denies Plaintiff's Motion for Summary Judgment, ECF No. 11, and grants the Commissioner's Motion for Summary Judgment, ECF No. 13.

## I.    Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[4] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[5] If the claimant is engaged in substantial gainful activity, benefits are denied.[6] If not, the disability-evaluation proceeds to step two.[7]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical

---

[4] 20 C.F.R. §§ 404.1520(a), 416.920(a).

[5] *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[6] *Id.* §§ 404.1520(b), 416.920(b).

[7] *Id.* §§ 404.1520(b), 416.920(b).

or mental ability to do basic work activities.[8] If the claimant does not, benefits are denied. [9] If the claimant does, the disability-evaluation proceeds to step three.[10]

Step three compares the claimant's impairment(s) to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[11] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[12] If an impairment does not, the disability-evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work she performed in the past by determining the claimant's residual functional capacity (RFC).[13] If the claimant is able to perform prior work, benefits are denied.[14] If the claimant cannot perform prior work, the disability-evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national

---

[8] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[9] *Id.* §§ 404.1520(c), 416.920(c).

[10] *Id.* §§ 404.1520(c), 416.920(c).

[11] *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[12] *Id.* §§ 404.1520(d), 416.920(d).

[13] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[14] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

economy—in light of the claimant's RFC, age, education, and work experience.[15] If so, benefits are denied. If not, benefits are granted.[16]

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[17] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[18]

## II.    Factual and Procedural Summary

Plaintiff filed Title II and XVI applications, alleging a disability onset date of June 1, 2014.[19] Plaintiff meets the insured status requirements through March 31, 2017.[20] Her claim was denied initially and upon reconsideration.[21] A telephonic administrative hearing was held before Administrative Law Judge R.J. Payne.[22]

In denying Plaintiff's disability claims, the ALJ made the following findings:

---

[15] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[16] 20 C.F.R. §§ 404.1520(g), 416.920(g).

[17] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[18] *Id.*

[19] AR 107.

[20] AR 17.

[21] AR 159 & 167.

[22] AR 41-104.

- Step one: Plaintiff had not engaged in substantial gainful activity since June 1, 2014, the alleged onset date;

- Step two: Plaintiff had the following medically determinable severe impairments: diabetes, hypertension, obesity, major depressive disorder, social phobia, generalized anxiety disorder versus unspecified anxiety, and a history of benzodiazepine abuse and alcohol dependence;

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

- RFC: Plaintiff had the RFC to:

  Perform a wide range of sedentary work as defined in 20 CFR 404.1567(a) and 416.9679(a). Exertionally, [Plaintiff] can lift no more than 20 pounds at a time occasionally but can lift or carry 10 pounds at a time frequently; can sit for six hours; and can stand and/or walk for four hours total in any combination in an eight-hour workday with normal breaks. Non-exertionally, [Plaintiff] can engage in frequent stooping; occasional crouching, kneeling, and crawling; frequent climbing of ramps and stairs; no climbing of scaffolds; and occasional climbing of ladders of five steps or less, consistent with a step or partial ladder. Environmentally, [Plaintiff] should avoid concentrated exposure to marked temperature extremes of heat and cold, cannot work at unprotected heights, and can only frequently work around hazardous moving machinery. In addition, [Plaintiff] has mental limitations in that she can have only occasional contact with the general public can only occasionally work with or in the vicinity of coworkers but not in a teamwork-type work setting; can handle only occasional normal supervision, that is, no over-the-shoulder or confrontational-type of supervision; would do best in a routine work setting with little or no changes; can have no fast-paced or strict production quota-

type work; and cannot be in a work environment where alcohol is sold.

- Step four: Plaintiff was not capable of performing past relevant work; and

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff was capable of performing work that existed in significant numbers in the national economy, such as toy stuffer, merchandise marker, leather laminator, and parking lot attendant.[23]

When assessing the medical-opinion evidence, the ALJ gave:

- great weight to the opinions of testifying experts Michael Lace, Psy.D. and Eliza Pierko, M.D., and examining psychologists NK Marks, Ph.D. and Luci Carstens, Ph.D.;

- significant weight to the opinion of state agency psychologist Jerry Gardner Ph.D.; and

- little weight to the opinions of Daniel Pitts, ARNP, PMHNP, Dr. Marks, Dr. Carstens, examining psychologist Manuel Gomes, Ph.D., state agency medical consultant Robert Hander, M.D., and treating physician Jennifer Charron, M.D.

The ALJ also found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that her

---

[23] AR 32-33.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.[24]

      Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[25] Plaintiff timely appealed to this Court.

### III.   Standard of Review

      A district court's review of the Commissioner's final decision is limited.[26] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[27] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[28] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court upholds

---

[24] AR 21.

[25] AR 1.

[26] 42 U.S.C. § 405(g).

[27] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[28] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

1

2

the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[29] The Court considers the entire record as a whole.[30]

3

4

5

6

Further, the Court may not reverse an ALJ decision due to a harmless error.[31] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[32] The party appealing the ALJ's decision generally bears the burden of establishing harm.[33]

7

### IV.    Analysis

8

### A.    Medical Opinions: Plaintiff fails to establish consequential error.

9

10

Plaintiff challenges the ALJ's assignment of little weight to Dr. Marks' and Dr. Carstens' marked limitations and also the opinions of Dr. Gomes and Mr. Pitts.

11

12

13

14

[29] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

15

16

17

18

19

[30] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

20

21

[31] *Molina*, 674 F.3d at 1111.

22

[32] *Id.* at 1115 (quotation and citation omitted).

23

[33] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

The weighing of medical-source opinions is dependent upon the nature of the medical relationship, i.e., 1) a treating physician; 2) an examining physician who examines but did not treat the claimant; and 3) a reviewing physician who neither treated nor examined the claimant.[34] Generally, more weight is given to the opinion of a treating physician than to an examining physician's opinion and both treating and examining opinions are to be given more weight than the opinion of a reviewing physician.[35] When a treating physician's or evaluating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and when it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record.[36] A reviewing physician's opinion may be rejected for specific and legitimate reasons supported by substantial evidence, and the opinion of an "other" medical source may be rejected for specific and germane reasons supported by substantial evidence.[37] The opinion of a reviewing physician serves as substantial evidence if it is supported by other independent evidence in the record.[38]

---

[34] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

[35] *Id.*; *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

[36] *Lester*, 81 F.3d at 830.

[37] *Molina*, 674 F.3d at 1111; *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).

[38] *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

As discussed below, the Court finds Plaintiff fails to establish that the ALJ consequentially erred when weighing the medical opinions.

1.    Dr. Marks and Dr. Carstens

On May 14, 2016, Dr. Marks performed a psychological evaluation of Plaintiff.[39] Dr. Marks diagnosed Plaintiff with posttraumatic stress disorder, social anxiety disorder (social phobia), and unspecified depressive disorder. Dr. Marks opined that Plaintiff had none or mild limitations in understanding, remembering, and persisting in tasks by following very short and simple instructions; performing routine tasks without special supervision; adapting to changes in a routine work setting; making simple work-related decisions; being aware of normal hazards and take appropriate precautions; and maintaining appropriate behavior in a work setting. Dr Marks also opined that Plaintiff was moderately limited in understanding, remembering, and persisting in tasks by follow detailed instructions; learning new tasks; and completing a normal workday and work week without interruptions from psychologically based symptoms. Dr. Marks further opined that Plaintiff had marked limitations performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances without special supervision; asking simple questions or requesting assistance, communicating and performing effectively in a work setting; and

_____

[39] AR 609-14.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

setting realistic goals and planning independently.[40] Dr. Marks rated the overall severity of Plaintiff's limitations as moderate.

On May 31, 2016, Dr. Carsten reviewed Dr. Marks' psychological evaluation and opinion and concurred with Dr. Marks' opined limitations.[41]

The ALJ discounted Dr. Marks and Dr. Carsten's marked-limitation opinions because 1) they were inconsistent with the results of the mental status examination conducted at the time of Dr. Marks' psychological evaluation; 2) they were rendered for the purpose of determining eligibility for assistance from Washington State Department of Social and Health Services (DSHS); 3) such opinions are "usually substantially based on a claimant's self-reported symptoms and complaints"; and 4) they were completed by checked boxes with few objective findings in support of the degree of limitations.[42]

First, the ALJ found that Drs. Marks and Carsten's opinions regarding Plaintiff's marked limitations were inconsistent with those in Dr. Marks' mental status evaluation. Internally inconsistent opinions is a specific and legitimate reason to discount a doctor's opinion.[43] Dr. Marks' mental status evaluation revealed the following observations of Plaintiff: appearance well groomed; speech

---

[40] AR 612.

[41] AR 615-19.

[42] AR 29.

[43] *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

well-organized and progressive; cooperative attitude and behavior; tearful during appointment; affect sad; thought process and content, orientation, perception, memory, concentration, and insight and judgment all within normal limits; and fund of knowledge and abstract thought outside normal limits. The ALJ rationally found that Dr. Marks' noted observations, which included both normal and fairly minimal observations, were inconsistent with Drs. Marks and Carsten's opined disabling limitations.

Second, the ALJ erred when it discredited Drs. Marks and Carsten's opinions because they were completed for the purpose of DSHS.[44] The purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them.[45] An examining doctor's findings are entitled to no less weight when the examination is procured by the claimant that when it is obtained by the Commissioner.[46] The error, however, is harmless. As discussed, the ALJ cited other

---

[44] *See Godwin v. Colvin*, No. 2017 WL 343641, *4 (E.D. Wash. Jan. 23, 2017) (citing *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995)).

[45] *Lester*, 81 F.3d at 832.

[46] *Id.*

specific, legitimate reasons supported by substantial evidence which supports the ALJ's rejection of Dr. Marks and Dr. Carsten's opinions.[47]

Third, the ALJ discredited these opinions because they are "usually substantially based on a claimant's self-reported symptoms and complaints."[48] A physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted.[49] However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion.[50] Here, the ALJ made no specific finding that the medical sources relied on Plaintiff's self-reports, let alone a finding as to how heavily either doctor's opinion was based on Plaintiff's self-reporting. Instead, the ALJ only observed generally that DSHS opinions "although not always, such opinions are usually substantially based on a claimant's self-reported

---

[47] *Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998) (In the absence of other evidence undermining the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it.).

[48] AR 29.

[49] *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999); *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

[50] *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014); *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008).

symptoms and complaints.[51] Furthermore, Dr. Marks did rely on objective findings in forming her opinion. Dr. Marks conducted a mental status evaluation in support of her opinion. Even though the ALJ assigned little weight to the test results, absent a specific finding supported by substantial evidence that the medical sources relied on Plaintiff's self-reports in formulating their opinions, this reason was not a specific and legitimate reason to discredit the opinions. However, this error is harmless because the ALJ provided additional reasons for discounting Dr. Marks and Dr. Carsten's opinions that were specific, legitimate, and supported by substantial evidence.

Lastly, the ALJ discounted Dr. Marks and Dr. Carsten's marked limitation opinions when it found that Dr. Marks' check-box opinion contained few objective findings in support of the degree of limitations opined. An ALJ may permissibly reject check-box reports that do not contain any explanation of the bases for their conclusions.[52] Here, Dr. Marks' report is presented in check-box format without further explanation and, as explained above, Dr. Marks' mental status evaluation was inconsistent with her opined marked limitations. Accordingly, this was a

---

[51] AR 29.

[52] *Garrison*, 759 F.3d at 1014 n.17.

1

2

specific and legitimate reason to reject Dr. Marks and Dr. Carsten's opined

limitations.[53]

3

4

Plaintiff fails to establish the ALJ consequentially erred by discounting Dr.

Marks and Dr. Carsten's marked limitations opinion.

5

6

2.   Dr. Gomes

7

8

On August 30, 2015, Dr. Gomes conducted a psychological evaluation of

Plaintiff. Dr. Gomes diagnosed Plaintiff with generalized anxiety disorder; major

9

depressive disorder, severe; other specified trauma and stress related disorder;

10

alcohol use disorder, moderate (binge drinking); personal past history of sexual

11

abuse in child hood; personal history of self-harm; obesity; hypertension (self-

report); and diabetes mellitus, type II. Dr. Gomes opined that Plaintiff will have

12

difficulty learning new material; will not engage in conflict with authority, but will

13

14

react with increased depression and anxiety to corrections; will not easily engage

with those whom she is unfamiliar; will need additional, timely instruction; will

15

16

have difficulty initially attending an unfamiliar workplace with unfamiliar people

based on depression and anxiety; will not respond well to stress; and due to

17

struggles with anxiety and depression would not respond to treatment quickly,

18

19

20

[53] *Crane v. Shalala,* 76 F.3d 251, 253 (9th Cir. 1996); *Bray*, 554 F.3d at 1228

21

(recognizing that a medical opinion may be rejected if it is conclusory or inadequately

22

supported).

23

such that she would have difficulties being able to complete a normal workday/workweek without interruptions from her psychiatric condition.[54]

Dr. Gomes' opinion was contradicted by the testifying psychologist expert opinion of Dr. Lace, who opined that Plaintiff be limited to occasional contact with the general public, coworkers, and supervisors (normal supervision); slow paced tasks due to anxiety; routine work setting with little or no changes because of anxiety; and could work in the vicinity of coworkers but not teamwork type settings.[55] Dr. Lace's opinion is supported by other independent evidence in the record, including socializing with peers and work history, and therefore it serves as substantial evidence.[56] Accordingly, the ALJ, who is tasked with weighing conflicting medical opinions, was required to provide specific and legitimate reasons supported by substantial evidence for discounting Dr. Gomes' opinion.

---

[54] AR 568-69.

[55] AR 55-58.

[56] *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *see also* AR 441, 445 (plaintiff social with select peers throughout shift and watched movie in common area with peers); AR 443 (reported feeling worse, has not been able to self-medicate with alcohol/benzos); AR 565 (ability to maintain work schedule in the past); AR 610 (worked at Jack in the Box with family and friends and became a shift leader until began having panic attacks).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

The ALJ discounted Dr. Gomes' opinion because it was 1) inconsistent with the testimony and opinion of Dr. Lace who reviewed the entire longitudinal record; 2) based in part on diagnosis of trauma and stress-related disorders while Dr. Lace testified the disorders were not firmly established as severe; 3) inconsistent with the May 2016 DSHS psychological evaluation; 4) inconsistent with Dr. Gomes' own mental status examination; 5) inconsistent with activities in the longitudinal record; and 6) based on Plaintiff's subjective complaints without objective support.

First, an ALJ may give more weight to an opinion that is based on more record reviewed and supporting evidence.[57] Here Dr. Lace reviewed the entire administrative record, including Dr. Gomes' report, while Dr. Gomes reviewed the May 6, 2013 medical notes, November 10, 2014 hospitalization discharge summary, and November 1, 2014 emergency department medical notes. That Dr. Lace was more familiar with Plaintiff's longitudinal case record was a legitimate and specific reason to give more weight to Dr. Lace's opinion than to Dr. Gomes' opinion.

---

[57] *See* 20 C.F.R. § 404.1527(c)(6) (specifying that the extent to which a medical source is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight to give that opinion); *Lingenfelter*, 504 F.3d at 1042 (recognizing that the ALJ is to consider the consistency of the medical opinion with the record as a whole and assess the amount of relevant evidence that supports the opinion); *Andrews*, 53 F.3d at 1041 (same).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Second, the ALJ discounting Dr. Gomes' opinion because it was based in part on diagnosed trauma and stress-related disorders that expert Dr. Lace testified were not established as severe is a rational finding supported by substantial evidence.[58] As explained above, Dr. Lace, after reviewing the entire administrative record, opinioned that PTSD would not be established, and if it was established it would be non-severe, while Dr. Gomes based his prognosis in part on symptoms of PTSD based on multiple childhood experiences.[59] Discounting Dr. Gomes' opinion because it was based on contradicting evidence as opinioned by Dr. Lace, was a legitimate reason to discount Dr. Gomes' opinion.

Third, the ALJ finding that Dr. Gomes' opinion was inconsistent with Dr. Marks' May 2016 DSHS psychological evaluation is a rational finding supported by substantial evidence. An ALJ is not obliged to credit medical opinions that are contradicted by the opinions of other examining medical sources.[60] Here, the ALJ gave great weight to Dr. Marks' moderate limitations involving understanding remembering and persisting in tasks, learning new tasks, and completing a normal workday and work week, while Dr. Gomes opined Plaintiff would have difficulties learning new materials, and completing a normal workday/workweek without

---

[58] *Id.*

[59] AR 54 & 568.

[60] *Tommasetti*, 533 F.3d at 1041

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 18

interruptions from psychiatric condition.[61] The ALJ rationally found that Dr. Gomes' opined limitations were inconsistent with Dr. Marks' opined moderate limitations and that Dr. Marks' opined moderate limitations were more consistent with the longitudinal record.

Fourth, the ALJ found that Dr. Gomes' opinion regarding Plaintiff's limitations was inconsistent with his mental status examination. Internally inconsistent opinions is a specific and legitimate reason to discount a doctor's opinion.[62] As explained above, Dr. Gomes' mental status examination revealed Plaintiff appeared well organized with progressive speech, a cooperative attitude and behavior; with normal thought process and content, orientation, perception, memory, and concentration; and responded with humor and held good eye contact throughout examination.[63] The ALJ rationally found that Dr. Gomes' noted normal observations were inconsistent with his disabling limitations.

Fifth, the ALJ found Dr. Gomes' opinion inconsistent with Plaintiff's activities in the longitudinal record. An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities.[64] Here, the ALJ highlighted that Plaintiff cared for two foster children until she reported ceasing

---

[61] AR 569 & 613-14.

[62] *See Tommasetti*, 533 F.3d at 1041.

[63] AR 566-69.

[64] *Morgan,* 169 F.3d at 601-02.

foster care due to panic attacks, her aunt's children, and her twelve-year-old sister; washes dishes, does laundry, and cleans her room on a weekly basis; and vacationed in California.[65] On this record, the nature and quality of the activities cited by the ALJ as inconsistent with Dr. Gomes' opinion do not constitute a legitimate reason to discount Dr. Gomes' opinion because the ALJ failed to meaningfully articulate how the nature and quality of the activities are inconsistent with sustaining full-time work. Yet, any error by the ALJ in relying on Plaintiff's daily activities as a basis to discount Dr. Gomes' opinion is harmless because the ALJ provided other specific and legitimate reasons, supported by substantial evidence, to discount Dr. Gomes' opinion.[66]

Sixth, the ALJ discounting Dr. Gomes' opinion because the opinion was based on Plaintiff's subjective complaints and not supported by objective medical evidence is a rational finding supported by substantial evidence. "A physician's opinion . . . premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted."[67] Because, as explained below, the ALJ properly discounted Plaintiff's reported symptoms because they were inconsistent with the objective medical evidence and longitudinal medical record, the ALJ also properly rejected

---

[65] *See e.g.,* AR 25, 281 & 572.

[66] *See Molina*, 674 F.3d at 1115.

[67] *Morgan*, 169 F.3d at 602 (internal quotation marks omitted).

1

2

the findings of Dr. Gomes to the extent they were based on Plaintiff's subjective complaints.[68]

3

4

Plaintiff fails to establish that the ALJ consequentially erred by discounting Dr. Gomes' opinion.

5

6

      3.    <u>Mr. Pitts</u>

7

8

9

10

11

12

13

14

15

16

On September 20, 2016, nurse practitioner, Daniel Pitts, completed a mental residual functional capacity assessment. Mr. Pitts opined that Plaintiff had moderate limitations in understanding and remembering very short and simple instructions; carrying out very short simple instructions; sustaining an ordinary routine without special supervision; working in coordination with or proximity to others without being distracted by them; making simple work-related decisions; interacting appropriately with the general public; asking simple questions or requesting assistance; getting along with co-workers or peers without distracting them; maintaining socially appropriate behavior; adhering to basic standards of neatness and cleanliness; being aware of normal hazards and taking appropriate precautions; and setting realistic goals or making plans independently of others.

17

18

19

20

21

22

---

[68] *See Bray*, 554 F.3d at 1228 (ALJ properly may discount physician's opinion that is based solely upon claimant's self-reporting if ALJ concludes claimant's self-reporting is not credible); *Tonapetyan*, 242 F.3d at 1149 (medical opinion premised on subjective complaints may be disregarded where record supports ALJ in discounting claimant's reported symptoms).

23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Mr. Pitts also opined Plaintiff had marked limitations in remembering locations and work-like procedures; understanding and remembering detailed instructions; carrying out detailed instructions; maintaining attention and concentration for extended periods' performing activities within a schedule, maintaining regular attendance and being functional within customary tolerances; accepting instructions and responding appropriately to criticism from supervisors; and responding appropriately to changes in the work setting. Mr. Pitts also opined that Plaintiff had severe limitations in terms of her ability to complete a normal work-day and workweek without interruptions from psychologically based symptoms, to perform at a consistent pace without an unreasonable number and length of rest periods, and travel in unfamiliar places or use public transportation. Mr. Pitts further opined that Plaintiff had marked limitations in terms of maintaining social functioning and concentration, persistence, or pace and that Plaintiff met the criteria of the mental listings. Lastly, Mr. Pitts opinioned that based on the cumulative limitations, Plaintiff is likely to be off task for over thirty percent of the time during a forty-hour work week and miss four or more days per month when attempting to work a forty-hour work schedule.[69]

The ALJ discounted Mr. Pitts' opinion because 1) issues of disability are reserved to the Commissioner; 2) it was inconsistent with Mr. Pitts' objective

---

[69] AR 812-15.

findings, which support Dr. Lace's testimony; and 3) inconsistent with the 2016 DSHS evaluation and October 2015 psychological evaluation.

First, the ALJ discounted Mr. Pitts' opinion because the issue of disability is reserved to the Commissioner. Opinions on the ultimate issue of disability are an issue reserved to the Commissioner.[70] That Mr. Pitts opined Plaintiff had "disabling anxiety" is a germane reason to discount Mr. Pitt's opinions, so long as the ALJ considered the substance of Mr. Pitt's evaluation, which the ALJ did as is discussed below.[71]

Second, the ALJ noted Mr. Pitts' opinion was internally inconsistent. An ALJ may reject opinions that are internally inconsistent. Although Mr. Pitts noted that Plaintiff consistently arrived on time to appointments, not having any notable psychomotor agitation, and presenting as calm, cooperative, and pleasant, with some mood abnormalities and fair insight and judgment and the ability to maintain eye contact, he then imposed marked limitations in social functioning and concentration, persistence, or pace, and severe limitations in completing a

---

[70] 20 C.F.R. § 404.1527(c); *see also Wickramasekera v. Astrue*, No. CV 09-449-TUC-HCE, 2010 WL 3883241, at *34 (D. Ariz. Sept. 29, 2010) (applying regulation to lay witness testimony).

[71] AR 815.

workday/workweek without interruptions.[72] These internal inconsistencies are a germane reason to discount Mr. Pitts' opinion.

Lastly, the ALJ discounted Mr. Pitts' opinion because it was inconsistent with the evaluation in October 2015 and the May 2016 DSHS evaluation. Inconsistency with the medical evidence is a germane reason for rejecting lay witness testimony.[73] As discussed above, Mr. Pitts opined Plaintiff was markedly limited in understanding, remembering and carrying out detailed instructions, while the May 2016 DSHS evaluation opined only a moderate limitation in Plaintiff's ability to understand, remember, and persist in learning new tasks.[74] Inconsistency with the medical evidence was a germane reason to discount Mr. Pitts' opinion.

Plaintiff fails to establish that the ALJ erred by discounting Mr. Pitts' opinion.

**B.      Step Three (Listings): Plaintiff fails to establish error.**

Plaintiff contends the ALJ erred by finding that Plaintiff's impairments did not meet Listings 12.04, 12.06, and 12.15 singly, or in combination. The listings

---

[72] AR 575, 589, 598, & 812-13.

[73] *See Bayliss*, 427 F.3d at 1218; *Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001) (germane reasons include inconsistency with medical evidence, activities, and reports).

[74] AR 609-14.

findings by the ALJ must be read in conjunction with the entire ALJ decision.[75]

Here, the ALJ discussed the medical records and medical opinions related to

Plaintiff's mental impairments at great length. The ALJ's analysis in its entirety

as to Plaintiff's mental-health impairments permits the Court to meaningfully

review the ALJ's finding that Plaintiff's mental impairments did not satisfy the

listings paragraph C criteria. Plaintiff's argument is based entirely on her initial

argument that the ALJ erred in considering the medical-opinion evidence. For the

above-explained reasons, the ALJ's consideration of the medical-opinion evidence

was legally sufficient and supported by substantial evidence.

     The ALJ's finding that Plaintiff did not meet or medically equal any listing

is rational and supported by substantial evidence

## C.    Plaintiff's Symptom Reports: Plaintiff fails to establish consequential error.

     Plaintiff argues the ALJ failed to provide valid reasons for rejecting her

symptom reports. When examining a claimant's symptom reports, the ALJ must

make a two-step inquiry. "First, the ALJ must determine whether there is objective

medical evidence of an underlying impairment which could reasonably be expected

to produce the pain or other symptoms alleged."[76] Second, "[i]f the claimant meets

the first test and there is no evidence of malingering, the ALJ can only reject the

---

[75] SSR 17-2p.

[76] *Molina*, 674 F.3d at 1112.

claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[77] Here, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms inconsistent with the medical signs and laboratory findings of record.[78]

Plaintiff only challenges the legal standard used, that the objective medical evidence was inconsistent with Plaintiff's symptom complaints, and that Plaintiff's daily activities contradict her disabling symptoms.[79] Plaintiff failed to challenge the other reasons the ALJ cited in support of its finding that Plaintiff's symptom complaints were not entirely credible, thus, any challenges are waived and the Court may decline to review them.[80] However, upon review, the Court finds that the ALJ provided specific, clear, and convincing reasons, supported by substantial evidence, to support its finding.

As to the legal standard used by the ALJ, Plaintiff argues the ALJ used the wrong legal standard when it "misapprehended Plaintiff's allegations . . . that she cannot maintain employment on a regular, continuing basis, rather than that she

---

[77] *Ghanim v. Colvin*, 763 F.3d at 1163 (quoting *Lingenfelter*, 504 F.3d at 1036).

[78] AR 22.

[79] ECF No. 11 at 17-20 (citing SSR 96-8p (assessing RFC in initial claims)).

[80] *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).

is incapable of all work activity."[81] However, the ALJ only need to give "specific, clear and convincing reasons" for the rejection," as it did.[82]

The ALJ discounted Plaintiff's symptom reports because they were inconsistent with the objective medical evidence. Symptom reports cannot be solely discounted on the grounds that they were not fully corroborated by the objective medical evidence.[83] However, medical evidence is a relevant factor in considering the severity of the reported symptoms. [84] As discussed above, Plaintiff presented, during the course of treatment, as calm, cooperative, pleasant, well oriented, with fair insight and judgment, good eye contact, speech rate and rhythm, and thought process and content, orientation, perception, memory, and concentration within normal limits, all in contrast to Plaintiff's reported disabling symptoms. This was a relevant factor for the ALJ to consider.

The ALJ also discounted Plaintiff's symptom reports because they were inconsistent with improvement once Plaintiff began treatment. The effectiveness of treatment is a relevant factor in determining the severity of a claimant's

---

[81] ECF No. 11 at 18.

[82] *Ghanim*, 763 F.3d at 1163 (quoting *Lingenfelter*, 504 F.3d at 1036).

[83] *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

[84] *Id.*

symptoms.[85] Here, the ALJ noted Plaintiff had normal mood and affect at times when her anxiety and depression were stable, abstained from alcohol, and continued to take her medications as prescribed.[86] This finding is supported by substantial evidence and was a clear and convincing reason to discount Plaintiff's symptom complaints.

The ALJ also discounted Plaintiff's symptom reports because they were inconsistent with her activities of daily living.[87] If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.[88] As previously described, the ALJ highlighted that Plaintiff cared for two foster children, her aunt's children, and her twelve-year-old sister; washes dishes, does laundry, and cleans her room

---

[85] 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2011*); Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (determining that conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (recognizing that a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).

[86] *See e.g.,* AR 669-72, 686-87 & 836-37.

[87] AR 24.

[88] *Molina*, 674 F.3d at 1113.

on a weekly basis; and vacationed in California.[89] In order for Plaintiff's cited activities to be deemed activities of daily living constituting a clear and convincing reason to discount Plaintiff's symptoms, the ALJ needed to have more meaningfully articulated this finding. These cited activities, which can be achieved with relatively limited interaction with strangers and not on an everyday basis, do not "contradict claims of a totally debilitating impairment."[90] However, the ALJ articulated other supported grounds for discounting Plaintiff's reported symptoms—that they were inconsistent with the objective medical evidence and inconsistent with improvement observed with continued treatment—thus, the ALJ's decision to discount Plaintiff's reported symptoms is upheld on this record.

Plaintiff can identify some evidence in the record that shows abnormal mental health observations.[91] However, in reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.[92] If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably draw from the record."[93] Even if Plaintiff can identify evidence that can

---

[89] AR 25, 281, 572, 831, 834.

[90] *Molina*, 674 F.3d at 1112-13.

[91] ECF No. 14 at 9 (observations of tearfulness, anxiety, and suicidal ideations).

[92] *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

[93] *Molina*, 674 F.3d at 1111.

be interpreted more favorably to Plaintiff's position, the evidence is susceptible to more than one rational interpretation, and therefore the ALJ's ultimate conclusion must be upheld.[94]

In summary, Plaintiff fails to establish the ALJ erred by discounting Plaintiff's symptom reports.

**D.    Step Five: Plaintiff fails to establish error.**

Plaintiff argues that the ALJ's hypothetical failed to account for the limitations set forth by her providers. However, this argument merely restates Plaintiff's earlier allegations of error, which are not supported by the record. Accordingly, the ALJ's hypothetical properly accounted for the limitations supported by the record.[95]

## V.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **DENIED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED**.

3.    The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

4.    The case shall be **CLOSED**.

---

[94] *See Burch,* 400 F.3d at 679.

[95] *See Magallanes*, 881 F.2d at 756–57 (holding it is proper for the ALJ to limit a hypothetical to those restrictions supported by substantial evidence in the record).

1

**IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order,

2

provide copies to all counsel, and close the file.

3

**DATED** this 13th  day of May 2020.

4

5

s/Edward F. Shea
EDWARD F. SHEA
Senior United States District Judge

6

7

8

9

10

Q:\EFS\Civil\2019\19cv5053.Stephane Rule. MSJ.lc02.docx

11

12

13

14

15

16

17

18

19

20

21

22

23

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 31